IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA      )
                               )
    v.                     )
                               )      1:06cr489
PAUL E. DANIELS,          )
                               )
        Defendant.     )

**MEMORANDUM OPINION**

Defendant-appellant Paul E. Daniels ("Daniels") appeals his conviction by a magistrate judge of two traffic offenses assimilated from Virginia law by 18 U.S.C. § 13 (the Assimilated Crimes Act or "ACA"): operating a motor vehicle after suspension of operator's license ("OAS"), in violation of Va. Code § 46.2-301, and operating a motor vehicle without a valid operator's license ("NOL"), in violation of Va. Code § 46.2-300.

The sole issue raised in Daniels's appeal is whether the magistrate judge erred in concluding that Fuller Road on the Marine Corps Base at Quantico ("Quantico") is a "highway" under Va. Code § 46.2-100, as amended April 4, 2006. For the reasons stated below, which differ from the reasoning relied upon by the magistrate judge, the convictions will be affirmed.

**Background**

For purposes of the bench trial, the parties stipulated to all facts except the status of Fuller Road. Specifically, they stipulated that Quantico is within the Eastern District of Virginia and within the special maritime and territorial

jurisdiction of the United States. On June 7, 2006, Daniels was stopped by Marine military police ("MPs") on Fuller Road as he attempted to drive into the Quantico base through Gate # 1. After determining that Daniels's car did not have a Department of Defense decal, the MPs followed the standard procedure of asking the driver for his operator's license. When Daniels was unable to produce it, the MPs determined through a computer check that his operator's license was suspended and that Daniels had been personally notified of the suspension by law enforcement on May 28, 2006. Daniels was cited for operating after suspension and driving without a license, and was issued an Immediate Base Revocation Notice stating that his privilege to drive either a privately-owned or government-owned vehicle aboard Quantico was immediately revoked.

The joint stipulations satisfied each of the elements of the two Virginia traffic offenses at issue, except for whether Daniels was operating a motor vehicle on a "highway" of the Commonwealth. Relying on subsection (ii) of the amended definition of Va. Code § 46.2-100, the magistrate judge found that Fuller Road was a "highway" and convicted Daniels of both charges.

## Discussion

In reviewing the decision of a magistrate judge, a district court applies the same standard of review as would a court of

appeals reviewing a decision of a district court. Fed. R. Crim. P. 58(g)(2)(D). Accordingly, the magistrate judge's conclusions of law will be reviewed <u>de novo</u> and his factual conclusions reviewed for clear error. <u>Ornelas v. United States</u>, 517 U.S. 690, 699 (1996); <u>United States v. McKinnon</u>, 92 F.3d 244, 246 (4th Cir. 1996).

The two Virginia traffic offenses include as an element the requirement that the operation of a motor vehicle be upon "any highway of the Commonwealth".[1] The term "highway" is defined in Virginia Code § 46.2-100, as amended, to mean

> the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys, and, for law-enforcement purposes, (i) the entire width between the boundary lines of all private roads or private streets that have been specifically designated "highways" by an ordinance adopted by the governing body of the county, city, or town in which such private roads or streets are located and (ii) the entire width between the boundary lines of every way or place used for purposes of vehicular travel on any property owned, leased, or controlled by the United States government and located in the Commonwealth.

The reference to federal property in subsection (ii) was added to the definition in April 2006. The magistrate judge relied on that

---

[1] Va. Code § 46.2-300 provides in relevant part: "No person...shall drive any motor vehicle on any highway in the Commonwealth...unless the license is valid." Va. Code § 46.2-301 provides in relevant part: "[N]o resident or nonresident...whose driver's license, learner's permit, or privilege to drive a motor vehicle has been suspended or revoked...shall thereafter drive any motor vehicle...on any highway in the Commonwealth until the period of such suspension or revocation has terminated or the privilege has been reinstated."

amendment in determining that the defendant was guilty. However,

Daniels argued below, and argues in his appeal, that the plain

language of the ACA does not adopt the amendment to the core

definition of "highway," because the amendment applied only to

roads on federal enclaves and the ACA looks only to state laws of

general applicability.[2] Daniels argued that to apply the

amendment thus permitted the state to make federal law, an action

outside the state's jurisdiction. The magistrate judge found that

concurrent jurisdiction over the road in question made the

amendment a valid exercise of the powers of the state

legislature. Accordingly, relying on subsection (ii) of the

amended § 46.2-100, the magistrate judge convicted Daniels of

operating his vehicle on a highway in violation of Virginia law.

This Court need not determine whether the amendment to

§ 46.2-100 is lawful or whether, as amended, the Virginia motor

vehicle laws at issue can be assimilated under the ACA because

this Court finds that Fuller Road is a "highway" under the core

definition provided in § 46.2-100 without resort to the amended

clause.

---

[2] The ACA provides that: "Whoever [within the special
maritime and territorial jurisdiction of the United States] is
guilty of any act or omission which, although not made punishable
by any enactment of Congress, would be punishable if committed or
omitted within the jurisdiction of the State...in which such
place is situated, by the laws thereof in force at the time of
such act or omission, shall be guilty of a like offense and
subject to a like punishment." 19 U.S.C. § 13.

Relying on Fourth Circuit case law and the oral ruling of a judge from this district, Daniels argues that Fuller Road is not a "highway" under the core definition in § 46.2-100. Specifically, Daniels relies on the Fourth Circuit's decisions in United States v. Smith, 395 F.3d 516, 520 (4th Cir. 2005) (holding that signs at the entrance to the Central Intelligence Agency barring general public entry meant that the entrance road was not open to public use) and United States v. Adams, 426 F.3d 730, 732 (4th Cir. 2005) (holding that the road within a federal wildlife reservation, which was completely closed for an indefinite period of time owing to hurricane damage, was not a "highway" under Virginia law). Daniels also relies on the oral ruling in United States v. Johnson, Nos. 05mj750, 05mj796, 05mj797, 05mj802, 05mj807 (E.D. Va. Apr. 11, 2006) (order granting motion for judgment of acquittal), in which the district court, in reliance on Smith, concluded that Quantico base roads were not "highways" because they were not freely open to the public.

This Court finds that the holdings in Smith and Adams do not resolve the issue in this case because the facts are materially different. Specifically, the general public is not barred from using Fuller Road, as was the case in Smith, nor was Fuller Road completely closed, as was the road in Adams. In Smith, the defendant drove along an access road to the CIA where signs

barring public entry were present informing drivers that only CIA employees and those with authorized business could enter. The Fourth Circuit found that "because the general public is not permitted on the access road, it is not 'open to the use of the public for purposes of vehicular travel'" as required under the Virginia Code. Smith, 395 F.3d at 520-21.

In Adams, the defendant was stopped on a gravel road within a federal wildlife refuge that was completely and indefinitely closed to the public when he was pulled over. The Fourth Circuit pointed to a recent ruling of the Virginia Supreme Court, emphasizing the degree to which a road was open to the public, in finding that the road's closed status meant that it was not a "highway" under Virginia law. See Adams, 426 F.3d at 732, citing Caplan v. Bogard, 264 Va. 219, 226 (2002).

As these cases establish, in the Fourth Circuit, the "'true test' of whether a 'way' is a highway is 'whether the way or place of whatever nature is open to the use of the public for purposes of vehicular travel,'" Id., citing Caplan v. Bogard, 264 Va. at 226 (quoting Prilliman v. Commonwealth, 199 Va. 401, 407 (1957)); see also Furman v. Call, 234 Va. 437, 439 (1987) ("[T]he test for determining whether a way is a 'highway' depends upon the degree to which the way is open to public use for vehicular traffic.").

At Quantico, motorists possessing a Department of Defense

6

vehicle decal are admitted without restriction at all open gates.
Br. of the Appellant, Ex. 6. Gate # 1, on Fuller Road, is open
twenty-four hours a day. Id. Although the Quantico Base Commander
retains the authority to restrict access in the best interest of
the government and has issued orders requiring registration for
public access, the standing orders in evidence allow the public
to drive on Fuller Road whether or not they have business on the
base. Br. of the Appellant, Ex. 5. To enter the base through Gate
# 1, members of the public must simply produce a valid operator's
license, vehicle registration, and proof of insurance. Br. of
Appellant, Ex. 6. The Provost Marshal Instruction 23-04
("Military Police Gate Duty Procedures") allows sightseers, i.e.,
virtually any member of the public, to visit the base from 8 a.m.
until sunset, provided they use main roads only. Social visitors
to personnel or residents on the base are also allowed without
restriction from 8 a.m. until 10 p.m.; social visitors after 10
p.m. are restricted to the quarters of married personnel or the
Hostess House. Id. However, the presence of the town of Quantico
within the Marine Corps Base Quantico is of most significance.
Marine Corps Base Order 55602.C, which summarizes motor vehicle
traffic supervision procedures, states that

> persons not otherwise required by this order to register
> their motor vehicles are normally permitted...to transit
> this base to and from the town of Quantico without any
> requirement to obtain a visitor's pass or to register their
> vehicles with the Provost Marshal. They must enter only
> through gate # 1. Drivers must proceed via Fuller Road and

Potomac Avenue only, and must obey the traffic laws and
regulations of this base, and the Commonwealth of Virginia.[3]
Br. of the Appellant, Ex. 5.

These facts demonstrate clearly that Fuller Road within the
Quantico base is open to public use for vehicular traffic. The
requirement that visitors produce a valid operator's license,
registration, and proof of insurance is a minimal restriction
that does not render the roads of Quantico inaccessible to public
use. Indeed, persons traveling to and from the town of Quantico
are welcomed through Gate # 1 via Fuller Road upon presentation
of the above documents without any further inquiry into the
purpose of their visit; others can obtain a visitor's pass for
the purpose of sightseeing or social visits.

Daniels argues that the Fourth Circuit has emphasized the
presence of signage barring public entry in its analysis of
whether a roadway is open to the public. In Smith, the Fourth
Circuit observed that signage on the roads stated that only CIA
employees and those with authorized business were allowed entry.
This signage indicated to drivers that the roads were not open to
public use. On Fuller Road, signage states that the road belongs
to the U.S. Marine Corps and warns, "Authorized Personnel Only:

---

[3] Indeed, the public's right to access the town of Quantico
via Fuller Road has been judicially recognized. See United State
v. Watson, 80 F. Supp. 649, 651 (E.D. Va. 1948) (holding that the
United States owns Fuller Road, the access road to Quantico,
"subject to the right of ingress and egress in favor of the
property located in [the town of] Quantico.").

Authorized Entry Onto This Installation Constitutes Consent to Search of Personnel and The Property Under Their Control - Internal Security Act Sec 21, 50 USC 797." A fair reading of this signage is that it warns members of the public that if their entry is authorized, which it is upon the mere presentation of a license, registration, and proof of insurance, they will be deemed to have consented to a search. This signage does not, as in Smith, notify members of the public that they are not allowed on Fuller Road.

Our review of the significance of the signage is consistent with two post-Smith Fourth Circuit opinions. In United States v. Hill, --- F.3d ----, 2007 WL 60871 (4th Cir. 2007), the defendant attempted to enter the United States Naval Amphibious Base Little Creek through Gate 4. As in Daniels's case, a person entering through Gate 4 must present photo identification to the guard posted at Gate 4 to gain access. On the day of the charged conduct, a sign posted by Gate 4 read, "Welcome. Please Note: No weapons Allowed; Military Working dog on patrol; All persons and vehicles may be searched; All subject to regulations 50 USC 797." The entrance to Boone Branch Medical Clinic (Boone Clinic), a facility that is open to the public without restriction, much like the town of Quantico, is located on the stretch of road where the defendant had been traveling as he approached Gate 4. The road was under the control of the Base's commanding officer,

9

but the Fourth Circuit noted that the commanding officer had

placed no restrictions on the public's use of the stretch of road

in question on the day of the charged conduct. The Quantico Base

Commander had similarly placed no restrictions on access to

Fuller Road when Daniels was stopped. On these facts, the Fourth

Circuit in Hill found that the stretch of road on which the

defendant was traveling was a "highway" because there were no

restrictions on public vehicular use of the road.

Consistent with that ruling is the unpublished decision of

United States v. Scott, 188 Fed. Appx. 213 (4th Cir.

2006)(unpublished), in which the Fourth Circuit held that the

road within Fort Lee where the defendant was stopped was a

"highway" under Virginia law. In Scott, the Court found that

members of the public were free to drive on Fort Lee's roads,

provided they met conditions posted on the roadway signs before

entry. Again, these conditions were essentially the same as those

applying to Fuller Road when Daniels was stopped. Specifically,

motorists possessing a Department of Defense vehicle decal were

admitted at all four entrance gates to Fort Lee. Anyone not

affiliated with Fort Lee and not possessing an admittance decal

was required to use the Lee Avenue gate; however, a visitor's

pass could be obtained by presenting a driver's license, vehicle

registration, and proof of insurance. Once a visiting motorist

received a pass, he or she was subject to a vehicle inspection,

10

but could drive freely on the roads within Fort Lee's property.[4]

The facts in both <u>Hill</u> and <u>Scott</u> are extremely similar to those in the instant case and sufficiently different from those in <u>Smith</u> and <u>Adams</u> to compel the conclusion that Fuller Road at Quantico is open to public use and constitutes a "highway" under Virginia law.

Moreover, this holding comports with the purposes of the ACA. By enacting the ACA, Congress expressed its intent that "to the extent that offenses are not preempted by congressional enactments, there shall be complete current conformity with the criminal laws of the representative States in which the enclaves are situated." <u>United States v. Sharpnack</u>, 355 U.S. 286, 293 (1958). In this case, there is no federal law addressing motor vehicle crimes in federal enclaves within Virginia.

Courts have uniformly agreed that Congress enacted the ACA to provide a gap-filling criminal code for federal reservations, to conform the law governing federal reservations to the laws of the surrounding jurisdiction, and to give those living within a

---

[4] In finding the roads of Fort Lee sufficiently open to the public to constitute "highways" under Virginia law, the Fourth Circuit relied on the decision of the Virginia Court of Appeals in <u>Coleman v. Commonwealth</u>, 16 Va.App. 747, 749 (1993), which dealt with a similarly restricted federally-owned enclave. In <u>Coleman</u> the Court found that the requirement that visitors without registration decals stop at the gate to identify themselves and state their business was a "minimal restriction" that "in no way constitute[d] an appropriation of the property to private use," and thus held the road in question to be open to the use of the public for purposes of vehicular travel.

federal reservation the same protections afforded those living outside the federal reservation. United States v. Minger, 976 F.2d 185, 187 (4th Cir. 1992), citing United States v. Kiliz, 694 F.2d 628, 629 (9th Cir. 1982). Mere monitoring of the entrance to a federal enclave should not undermine the sound policy concerns of the ACA. As the Ninth Circuit noted in Kiliz, "it would render the ACA...meaningless if the defendant could not be prosecuted in federal court for the identical offense on the roads in the federal enclave as he had only moments before perpetrated on the state roads." Kiliz, 694 F.2d at 632.

### Conclusion

For the above-stated reasons, Daniels's convictions will be affirmed. An appropriate Order will issue with this Opinion.

Entered this 25th day of January, 2007.

_____/s/_____
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia